# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 20-21458 (JJT) |
| | ) | | |
| CHIP'S SOUTHINGTON, LLC | ) | CHAPTER | 11 |
|     Debtor. | ) | | |
| | ) | RE: ECF Nos. | 183, 214, 228, 235 |

### MEMORANDUM OF DECISION ON DEBTOR'S MOTION FOR ORDER VACATING ORDER OF DISMISSAL OF THE DEBTOR'S CHAPTER 11 CASE

I.    INTRODUCTION

On April 9, 2021, Chip's Southington, LLC ("Debtor") filed a Motion to Dismiss its voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code (ECF No. 140, "Motion to Dismiss"), so that it could apply for—and critically, qualify for—a second draw paycheck protection loan ("PPP-2 loan") pursuant to the CARES Act Paycheck Protect Program. The Debtor sought dismissal to obtain the PPP-2 loan, in part, to fund operating expenses related to a plan of reorganization. The Court granted the Motion to Dismiss without prejudice (ECF No. 183, "Dismissal Order"), and the Debtor thereafter applied for and received its PPP-2 loan outside of bankruptcy following the dismissal of its case.[1]

Now pending before the Court is the Debtor's Motion for Entry of Order (I) Vacating Order of Dismissal and (II) Granting Related Relief (ECF No. 214, the "Motion to Vacate"), whereby the Debtor, having now obtained additional funds through the PPP-2 loan, seeks to vacate the Dismissal Order and have its Chapter 11 petition reinstated "so that it can seek

---

[1] During the Gap Period, as defined below, the Debtor also applied for additional relief in the form of a grant through the Restaurant Revitalization Fund ("RRF"). At the hearing on the Motion to Vacate, the Debtor indicated that its efforts in obtaining the RRF grant were unavailing and, that by obtaining the PPP-2 loan, the Debtor believed it had obtained the full amount of Covid relief resources available to it.

confirmation of a plan of reorganization." The United States Trustee ("UST") objected (ECF No. 228, "Objection") to the Motion to Vacate, raising three principal concerns: (1) the Debtor has not sustained its burden of proving extraordinary or exceptional circumstances which would warrant the vacating of the Dismissal Order pursuant to Fed. R. Civ. P. 60(b)(6); (2) the Debtor has not established a basis under Rule 60(b)(6) to undo its voluntary, strategic, and deliberative act in obtaining the dismissal of its bankruptcy case; and (3) should the finality of the Dismissal Order be disturbed, a resumption of the Debtor's case after a gap period ("Gap Period") could create uncertainty and confusion regarding any actions taken from the date of dismissal through any potential reinstatement of the bankruptcy case.

To address the UST's concerns regarding any alleged transactions during the Gap Period, the Debtor filed a Response to the Objection which included a copy of its accounts payable ledger for bills incurred over this period, indicating that all bills had been paid in the ordinary course and that historical debt (i.e. pre-petition general unsecured claims) had not been paid and remained outstanding. (ECF No. 235, "Debtor's Response"). The Debtor's Response also specifically provided that: (1) there are no material claims arising from the Gap Period; (2) the original creditors have not been paid on their pre-petition claims; (3) the Debtor has been operating under a previous Court-approved cash collateral budget; and (4) the Debtor has not entered into any contracts, leases or otherwise deviated from the cash collateral regime. As evidence of the extraordinary circumstances that would warrant the relief requested, the Debtor's Response highlights the events of COVID-19 and the way in which the Debtor had to respond to them, in addition to the inability of a Chapter 11 small business debtor to obtain PPP loans.

A hearing on the Motion to Vacate was held on July 14, 2021 (ECF No. 236, "Hearing") whereat the Debtor's landlord and its primary secured lender both endorsed the Debtor's

approach in seeking to vacate the Dismissal Order and to reinstate its Chapter 11 case. The UST on the other hand, doubled down on its argument that no extraordinary circumstances were present that would warrant vacating the Dismissal Order, and that the proper path for the Debtor to take would be to file a new petition. Arguing that because we have all been operating in a "Covid world" for approximately 18 months, the UST claimed that it is no longer an extraordinary circumstance that a restaurant is facing serious problems and navigating fluid rules on governmental subsidies.

Underscoring that over the past 18 months there has been: (1) a global pandemic; (2) the passage of various iterations of Covid relief/PPP legislation; (3) one such iteration which would allow a small business debtor to be eligible of a PPP loan, but which also required that the Small Business Administration ("SBA") take certain action; and (4) the fact that the SBA did not take the requisite action, the Debtor argued that there are no circumstances more extraordinary than what has occurred over the last year.

For the reasons discussed herein, in addition to the reasons stated on the record at the Hearing, and consistent with the Court's Order at ECF No. 241, the Debtor's Motion to Vacate is GRANTED, the UST's Objection is OVERRULED, and the Debtor's Chapter 11 case is REINSTATED.

II.    RELEVANT FACTS

1.    The Debtor is one of five locations of "Chip's Family Restaurant," located in Southington, Connecticut.

2.    Starting in March 2020, the Debtor's restaurant business suffered a severe reduction in revenue and ability to operate due to the COVID-19 pandemic and the related restrictions put in place by the State of Connecticut.

3. As a result, beginning in March 2020, the Debtor was unable to pay the monthly rent due on its premises.

4. In April 2020, the Debtor received its first PPP loan.

5. On December 14, 2020, the Debtor's landlord, ExecWest ("Landlord"), sent a notice of default to the Debtor's primary secured lender, M&T Bank ("Bank"), stating that the Debtor, as tenant, had defaulted on the terms of its lease by failing to pay all rent due, and indicating that if the outstanding arrearage was not paid in full within twenty (20) days, the Landlord would be free to exercise its rights to terminate the lease and commence an eviction action.

6. On December 29, 2020, to avoid a potential eviction, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected treatment as a Subchapter V small business debtor. ECF No. 1.

7. On March 30, 2021, the Debtor filed its Chapter 11 Small Business Subchapter V Plan of Reorganization (ECF No. 128, "Plan of Reorganization") and a Motion to Assume its lease with ExecWest (ECF No. 129).

8. To effectuate the Plan of Reorganization, the Debtor indicated that it intended to apply for a second draw PPP loan.

9. The Debtor attempted, without success, to obtain the PPP-2 loan while in bankruptcy. After being refused a second draw PPP loan, the Debtor even brought a mandamus action in the District Court to compel the Small Business Administration ("SBA") to provide the loan, which also proved unsuccessful. See Chip's Southington, LLC v. Perriello, Civil Action No. 3:21-cv-00266 (MPS) ("Mandamus Proceeding").

10. Ineligible to receive a PPP-2 loan while in bankruptcy, on April 9, 2021, the Debtor filed its Motion to Dismiss, seeking to voluntarily dismiss its case in order to access a PPP-2 loan to assist with payment of covered expenses, such as rent, payroll, and other items. The United States Attorney, on behalf of the SBA, had encouraged the Debtor to follow this path following the Mandamus Proceeding.

11. The Debtor was open, transparent, and forthright about its strategic path and the financial necessity of obtaining governmental support if its reorganization efforts were to succeed.

12. On April 23, 2021, the Court granted the Motion to Dismiss without prejudice and entered the Dismissal Order (ECF No. 183).

13. Also on April 23, 2021, the Court entered an Order approving a Forbearance Agreement between the Debtor and its Landlord, whereby the Landlord agreed not to take action to dispossess the Debtor from its restaurant facility for a period of sixty (60) days (ECF No. 182). The forbearance period was thereafter extended by the Landlord through July 22, 2021 (ECF No. 219).

14. Following the dismissal of its case, the Debtor received a PPP-2 loan in the amount of approximately $300,000.

15. While such funds have been utilized to fund operations during the Gap Period, nearly $150,000 remains in the Debtor's coffers, some of which can be earmarked to defray the burden of the rental defaults with the Landlord.

16. On June 17, 2021, the Debtor filed the instant Motion to Vacate, pursuant to Fed. R. Civ. P. 60(b)(6), seeking to vacate the Dismissal Order and to reinstate the Debtor's Chapter 11 case so that it may promptly prosecute its Plan of Reorganization. The reinstatement of this

case, as opposed to a new Chapter 11 petition, would minimize transaction costs, accelerate the time to confirmation, and take advantage of the passage of the bar date in the original case.

17. During the Gap Period, management and officer compensation and benefits did not change; the Debtor continued operating under the Court-approved cash collateral order; the Bank and the Landlord have been supporting the Debtor's good faith efforts; no payments were made outside of the ordinary course; and the Debtor's PPP-2 loan was predominantly used to fund payroll.

18. The time, expenses, and delays inherent in refiling a Chapter 11 petition under these facts and circumstances would not likely enhance the reasonable prospect for reorganization of the Debtor.

19. Under the facts and circumstances presented to this Court, there appears to be no material prejudice to creditors—who have been on notice of the Debtor's path—from the reinstatement of this case.

III. DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to this bankruptcy proceeding pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, lists six grounds by which a court may relieve a party from a judgment or order, and provides, in pertinent part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This catch-all provision is a "grand reservoir of equitable power to do justice in a particular case." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted). Rule 60(b)(6) "confers broad discretion on the

trial court to grant relief when appropriate to accomplish justice." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (citation and internal quotations omitted).

Relief is warranted under Rule 60(b)(6) "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *Id.* (citations and internal quotations omitted). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors . . . [including] the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 137 S.Ct. 759, 778 (2017) (citation and internal quotations omitted). "The 'extraordinary circumstances' requirement exists in order to balance the broad language of Rule 60(b)(6) with the interest in the finality of judgments." 12 Moore's Federal Practice - Civil § 60.48 [3][a] (2021).

The Second Circuit has noted that on a motion brought under Rule 60(b)(6), "[t]he burden of proof is on the party seeking relief from judgment." *United States v. Int'l Bhd. Of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). "[T]he evidence in support of a 60(b)(6) motion must be highly convincing; there must be a showing that undue hardship will not result to other parties by granting the relief; and the movant must demonstrate that he possesses a meritorious claim or defense." *Boehner v. Heise*, 2009 WL 1360975, at *5 (E.D.N.Y. May 14, 2009).

Here, a global pandemic and the related regulatory restrictions implemented, including statewide stay-at-home orders and Governor Lamont's March 16, 2020 Executive Order No. 7D prohibiting restaurants from serving food on site, paralyzed the service industry and significantly affected the Debtor's ability to operate its restaurant—the Debtor's restaurant was shuttered and, as a result, its revenues plummeted. And while various Covid-relief measures were available, under the SBA's rules, the Debtor was deemed ineligible for a PPP-2 loan while involved in

bankruptcy proceedings.[2] In order to stay alive as it clawed back from the effects of Covid, to keep people employed, and to provide a meaningful distribution to its creditors, it was necessary for the Debtor to move in and out of bankruptcy.[3] Each of these instances represents an extraordinary circumstance that was beyond the Debtor's control. Accordingly, the Court finds that the Debtor has met its burden by demonstrating the extraordinary circumstances beyond its control that caused its Chapter 11 case to be dismissed.

The Court has also weighed any perceivable prejudice to the parties in interest should the Debtor's request be approved. The case that will be pending before the Court when reinstated will be the same case that was before the Court prior to dismissal. Any delay between dismissal and reinstatement was beyond the control of the Debtor and was driven by the need to diligently work through the various Covid-relief programs and the respective application processes. Rather than prejudicing any party in interest, the Debtor exiting bankruptcy to obtain a PPP-2 loan and moving to reinstate its prior case will ostensibly *benefit* the Debtor and its creditors significantly.

While the Debtor's PPP-2 funds cannot be used to directly satisfy its obligations to creditors, those funds may be deployed to fund certain covered expenses such as payroll and rent, thereby freeing up additional cash on hand from the Debtor's operations to devote to repayment of its creditors' claims. Had the Debtor not voluntarily dismissed its Chapter 11 case in order to obtain the PPP-2 loan outside of bankruptcy, it is likely that the Debtor would be unable to confirm its Plan of Reorganization, the Landlord would evict the Debtor, the Debtor's

---

[2] There has been no lack of controversy or disagreement about the legality of such a program, which ostensibly discriminated against Chapter 11 debtors. *See In re Springfield Hospital, Inc.*, 618 B.R. 70 (Bankr. D. Vt. 2020); *see also In re Calais Regional Hospital*, 615 B.R. 354 (Bankr. D. Me. 2020); *see also In re Roman Catholic Church of the Archdiocese of Santa Fe*, 615 B.R. 644 (Bankr. D. N.M. 2020).

[3] The path the Debtor is now pursuing has been endorsed by at least two other courts that this Court is aware of. *See In re Advanced Power Technologies, LLC*, Case No. 20-13304 (Bankr. S.D. Fla.); *see also In re Blue Ice Investments, LLC*, Case No. 20-02208 (Bankr. D. Ariz.). In each case, the Chapter 11 debtor voluntarily dismissed its case in order to apply for a PPP loan and then successfully moved to vacate the dismissal order and reinstate its Chapter 11 case.

business would close, the Debtor's employees would lose their jobs, the Debtor's creditors would not receive a distribution on their claims, and the Landlord would not receive any payment on the rent it is owed from 2020.

Further, should the Court deny the Debtor's request and require the Debtor to file a new petition as the UST suggests, the additional time, transaction costs, and duplicative work that would be required is inconsistent with the policies and remedial mandates inherent with a Subchapter V case. The Debtor contends, and has shown, that, consistent with the requirements of the Bankruptcy Code, there is a reasonable likelihood it will be able to now confirm a plan of reorganization. While Subchapter V of Chapter 11 was promulgated to enhance the reasonable likelihood of success for a small business debtor, the delays, transaction costs, and legal complications associated with filing a new case would assuredly diminish that reasonable likelihood of success.

The path the Debtor has chosen is intended to save its business and its employees' jobs, and to provide a meaningful distribution to its creditors. The path has been transparent and ostensibly one that the SBA has licensed or encouraged. Accordingly, the Court finds that obtaining the PPP-2 loan was in the best interests of the Debtor's estate and that vacating the Dismissal Order and reinstating the Debtor's Chapter 11 case will not unfairly prejudice any party in interest.

IV.   CONCLUSION

Contrary to the UST's claim that "[t]here are no extraordinary circumstances here because the Former Debtor's situation is self-created," the events that have transpired over the past year and a half have been nothing less than extraordinary. The facts and circumstances presented in this case are indeed anomalous, and the Debtor has successfully demonstrated to

this Court that these extraordinary circumstances were beyond its control. Vacating the Dismissal Order and reinstating the Debtor's Chapter 11 case will accomplish justice–the Debtor will have an opportunity to save its business, save its employees' jobs, and provide a distribution to its creditors.

Accordingly, for the reasons stated herein, and consistent with the Court's Order at ECF No. 241, and including all terms and conditions delineated therein to address concerns about potential confusion over the legal consequences of the Gap Period, the Dismissal Order at ECF No. 183 is hereby VACATED, the UST's Objection is hereby OVERRULED, and the Debtor's Chapter 11 Petition is hereby REINSTATED.

**IT IS SO ORDERED** at Hartford, Connecticut this 16th day of July 2021.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut